# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:07cv302

| | |
|---|---|
| JAMES R. ARNDT; and LINDA ARNDT, ) ) ) Plaintiffs, ) ) Vs. ) ) EXTREME MOTORCYCLES; and ) AMERICAN IRONHORSE ) MOTORCYCLE COMPANY, ) ) Defendants. ) _____ ) | ORDER |

**THIS MATTER** is before the court on plaintiffs' Motion for Remand (#11). Defendant American IronHorse Motorcycle Company (hereinafter "American IronHorse") has filed a response. No reply has been filed. Having carefully considered the motion, the pleadings, and the evidentiary materials submitted, the court enters the following findings and conclusions.

## FINDINGS AND CONCLUSIONS

### I. Procedural History and Background

While the Amended Complaint uses the language of tort and contract, this is a products liability action governed by the statutory law of the State of North

-1-

Carolina. In this action, the centerpiece of the Amended Complaint is that plaintiff James R. Arndt (hereinafter "Mr. Arndt") contends that he suffered severe, permanent, and disabling injuries, including closed head trauma, that purportedly occurred when he crashed his motorcycle. It is undisputed that the motorcycle was manufactured by American IronHorse and sold by defendant Jadian Enterprises, Inc.(hereinafter "Jadian"). American IronHorse is a Texas corporation, while Jadian is a North Carolina Corporation. The plaintiffs are husband and wife, and are citizens and residents of the State of North Carolina, residing together in Henderson County.

Mr. Arndt contends that the crash was caused not by any negligence on his part, but was the result of an improperly designed foot peddle or peg that allegedly made contact with a paved-road surface when he attempted to navigate a curve on a public road in Henderson County. Mr. Arndt further contends that he was traveling at well below the posted speed when such mishap occurred. In addition to the personal damages Mr. Arndt has asserted, Mrs. Arndt has alleged a claim for loss of consortium. In addition to suing the manufacturer of the motorcycle, plaintiff has also sued the dealer, Jadian.

This action was originally filed in the North Carolina General Court of Justice, Henderson County, Superior Court Division. American IronHorse timely removed such action to this court based on complete diversity. At the time of removal, Jadian

was not before the state court inasmuch as it had not been properly named. Apparently, plaintiffs sued such defendant only in its trade name - - "Extreme Motorcycles" - - and did not sue such dealership in its lawful name. After removal, plaintiffs properly and timely amended their Complaint as of right in accordance with Federal Rule of Civil Procedure 15(a).

Within 30 days of such removal, plaintiffs timely moved to remand this action to state court, arguing that complete diversity does not exist inasmuch as they have asserted claims against the retailer of the allegedly defective product, which is a corporate resident of North Carolina. Also pending are defendants' Motions to Dismiss certain claims and plaintiffs' Motion to Stay consideration of the Motions to Dismiss pending resolution of the Motion for Remand. A Memorandum and Recommendation shall be issued on the Motions to Dismiss and Motion to Stay soon after entry of this Order, unless the parties are able to resolve those motions without further court intervention after considering the Findings and Conclusions herein.

## II. Fraudulent Joinder

### A. Introduction

It is undisputed that the plaintiffs and Jadian are residents of the State of North Carolina and that the continued presence of Jadian in this matter would defeat complete diversity. In responding to the Motion for Remand, defendants contend that

Jadian has been "fraudulently joined" - - a term of "art" - - to prevent removal from federal court. In order to determine whether the Doctrine of Fraudulent Joinder would prevent remand, the court must determine whether

> there is <u>no possibility</u> that the plaintiff would be able to establish a cause of action against the in-state defendant . . . or . . . there has been outright fraud in the Plaintiff's pleadings of jurisdictional facts.

<u>Marshall v. Manville Sales Corp.</u>, 6 F.3d 229, 232 (4th Cir. 1993) (citation omitted; emphasis in the original). <u>See</u> <u>also</u> <u>Chevron U.S.A., Inc. v. Aguillard</u>, 496 F.Supp. 1038, 1041 (M.D. La. 1980).

As American IronHorse concedes in its argument, there is no argument or contention that plaintiffs have committed any fraud in their pleadings, and that the appropriate inquiry would be as to whether plaintiffs would be able to establish a cause of action against the in-state defendant. The court concurs that there is no basis for inquiry as to whether Jadian was fraudulently joined; instead, the issue is whether plaintiffs would be able to establish a viable cause of action against Jadian.

**B.     Applicable Standard**

In this case, American IronHorse argues that the action should remain in federal court inasmuch as "there is no possibility" that plaintiffs would be able to establish a viable cause of action against Jadian in state court. American IronHorse's Response, at 7-8. When a court considers whether the presence of a non-diverse

defendant defeats the court's diversity jurisdiction, it looks to whether there is any possibility that plaintiffs could obtain a judgment against the non-diverse defendant on the claims alleged. Beaudoin v. Sites, 886 F.Supp. 1300, 1302 (E.D.Va. 1995).

In conducting such review, the court is not limited to the allegations of a well-pled complaint, but may consider any evidence made a part of the record on the Motion for Remand, and apply standards similar to those used in considering motions for summary judgment. Id.; Goode v. STS Loan & Management, Inc., 2005 WL 106492, *2 (D.Md. 2005).[1] In conducting such review, the court must determine whether plaintiffs have stated a viable cause of action against the non-diverse defendant, Chevron U.S.A., Inc. v. Aquillard, surpra, and the court applies state law is used in determining the issue. Id. North Carolina law mandates that plaintiffs' "allege the specific acts which constitute the defendant's negligence." Ormond v. Crampton, 16 N.C. App. 88, cert. denied, 282 N.C. 304 (1972). While plaintiffs' factual allegations must be taken as true, their legal conclusions need not be, Jackson v. Bumgardner, 318 N.C. 172, 174 (1986), and plaintiffs' factual allegations must cover all elements of the cause of action. Stanback v. Stanback, 297 N.C. 181 (1979). Federal courts are mindful in conducting such review that the requirement of

---

[1] Due to the limits of ECF, a copy of such unpublished opinion is placed in the electronic record through reference to the Westlaw citation.

specificity under the North Carolina rules of pleading is greater than under the Federal Rules. Sutton v. Duke, 277 N.C. 94 (1970).

### C. Discussion

In moving for remand, plaintiffs rely on their unverified Amended Complaint, the exhibits thereto, and their supporting arguments. In response, American IronHorse has submitted responsive arguments as well as sworn affidavits and accompanying exhibits. The court has given careful consideration to all the materials.

Plaintiffs have asserted nine claims against the non-diverse defendant Jadian, which can be grouped into three categories: (1) product liability claims; (2) warranty claims; and (3) breach of contract and "negligent representation" claims. Count One is asserted only against American IronHorse Each category of claims will be discussed *seriatim*.

#### 1. Products Liability Claims

In Counts Two and Six, plaintiffs have asserted claims against the retailer of the motorcycle sounding in strict liability, failure to warn, and in the Ninth and Tenth causes of action, Mrs. Arndt has asserted derivative claims of negligent infliction of emotional distress and loss of consortium.

While not denominated as such by plaintiffs, the court finds that this action is a products liability action. North Carolina law defines a "product liability action" as:

> any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling of any product.

N.C.Gen.Stat. § 99B-1(3). While plaintiffs do not reference such provision of law in their Amended Complaint, the court construes this action to be a products liability action inasmuch as it is an action for personal injuries that were allegedly caused by the design, testing, formulation, and manufacture of a product, to wit, a motorcycle. See Amended Complaint, at ¶¶ 27-28. Such construction is not only consistent with North Carolina law, it is also consistent with Rule 8(f), Federal Rules of Civil Procedure, which requires that "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f).

Where a products liability action is brought, North Carolina law provides a limitation as to seller or retailer liability when:

> the product was acquired and sold by the seller under circumstances in which the seller was afforded no reasonable opportunity to inspect the product in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of . . . .

N.C.Gen.Stat. § 99B-2. Further, the North Carolina legislature specifically provided that "[n]o product liability action, except an action for breach of express warranty,

shall be commenced or maintained against" a seller. Id. Likewise, the North Carolina Court of Appeals held that a seller "would not . . . be responsible for a defect subsequently discovered which was not discernable by reasonable inspection at the time of sale." Nationwide Mut. Insur. Co. v. Weeks-Allen Motor Co., 18 N.C.App. 689 (1973).

In this case, the very allegations of the Amended Complaint specify that it was a *latent* as opposed to a *patent* defect with the motorcycle which caused the alleged accident. Amended Complaint, at ¶ 28(j)). This alleged defect was one which Mr. Arndt - - a rider with 23 years experience - - failed to recognize in the six months of uneventful riding that preceded the accident alleged.

A seller of goods has no duty to conduct independent testing of products its sells, inasmuch as retailers typically do not possess the skills, expertise, or resources one would need to do so. Further, there is no societal interest in requiring a retailer to warrant that the products he sells are free of manufacturer defects, inasmuch as the retailer is in no position to either detect or remedy latent defects prior to the sale. Morrison v. Sears, Roebuck & Co., 319 N.C. 298, 306 (1987)("a mere conduit of the product is under no affirmative duty to inspect or test for a latent defect . . . ."

To the extent plaintiffs have attempted to bring claims against Jadian for injuries that purportedly resulted from a defective product, those claims are precluded

as a matter of well settled state law inasmuch as Jadian is a seller of the goods in question. In addition, plaintiff's claims for strict liability and failure to warn are products liability claims which may only be brought against American IronHorse.

Having considered the allegations of the Amended Complaint and current case law, the court finds that there is no possibility that plaintiffs could obtain a judgment against the non-diverse defendant on such claims. Beaudoin v. Sites, 886 F.Supp. 1300, 1302 (E.D.Va. 1995).

### 2. Warranty Claims

#### a. Express Warranties

In Count Three, plaintiffs have asserted claims against the retailer of the motorcycle sounding in breach of express warranty, breach of implied warranty, and breach of the warranty of fitness for a particular purpose. As discussed above, the only cause of action that a consumer may bring against a retailer is a claim for breach of express warranty. N.C.Gen.Stat. § 99B-2. Plaintiffs assert a claim for breach of express warranty at paragraph 43 of their Amended Complaint:

> Plaintiffs allege that Upon information and belief, Defendants provided Jimmy with express warranties relating to the IronHorse, including but not limited to express warranties that the IronHorse was fit for the ordinary purpose for which it was intended and that it was free from defects in the design, manufacture, formulation, testing, assembly and/or inspection.

Docket Entry #6, at ¶ 43. As is permitted on a Motion for Remand, American IronHorse has submitted by way of declaration unchallenged evidence that the only express warranty made in relation to the sale of the subject motorcycle was the "Written Limited Express Warranty" issued by American IronHorse, and that Mr. Arndt acknowledged his receipt of the <u>Owner's Manual and Warranty Policy and Coverage</u>. In pertinent part, the <u>Owner's Manual</u> provides "[t]his Written Limited Express Warranty is the total warranty provided by American IronHorse. No other express or implied warranties are valid." Van Degna Decl., Exh. 2. On the record before the court, neither Jadian nor American IronHorse offered any express or implied warranties beyond those set out in the Limited Warranty and Owner's Manual. Van Degna Decl., Exhs. 1 & 2.

The issue now turns on whether plaintiffs could prevail on a claim that Jadian breached the Limited Express Warranty. The answer is found in the declaration and exhibits proffered by American IronHorse, which clearly show that both before and after the accident, Jadian repaired under warranty any problems that were called to its attention. Having fully complied with the terms of the written Limited Express Warranty, plaintiffs simply cannot state or further maintain a claim against Jadian. To the extent that plaintiffs may be contending that Jadian failed to repair the purported problem with the frame or foot peddle, as a matter of law a consumer

cannot bring a breach of warranty claim unless the warrantor is first provided with an opportunity to repair the problem. Lilley v. Manning Motor Co., 262 N.C. 468 (1964). Finally, plaintiffs cannot herein allege any damages inasmuch as the motorcycle has been repaired each time it was presented to the dealer with a problem. Having considered the allegations of the Amended Complaint and current case law, the court finds that there is no possibility that plaintiffs could obtain a judgment against the non-diverse defendant on such claims. Beaudoin v. Sites, 886 F.Supp. 1300, 1302 (E.D.Va. 1995).

### b. Breach of Implied Warranties

In Counts Four and Five, plaintiffs contend that Jadian has breached the implied warranties of merchantability and fitness for a particular purpose. These claims are equally not viable.

### (i) Merchantability

To possibly succeed on a claim a breach of the implied warranty of merchantability, a plaintiff must allege and be able to prove that:

(1)   a merchant sold goods;

(2)   the goods were not "merchantable" at the time of sale;

(3)   the plaintiff was injured by the goods;

(4)   the defect or other condition amounting to a breach of the implied

warranty of merchantability proximately caused the injury; and

(5) the plaintiff gave timely notice to the seller.

Wright v. T & B Auto Sales, Inc., 72 N.C.App. 449, 454 (1985). In this case, the issue is whether the motorcycle is or was ever "fit for the ordinary purposes" for which a motorcycle is used. It is undisputed that Mr. Arndt used it without complaint for six months before the accident, and based on the repair record, it is obvious that he continues to use it for its ordinary purpose. Plaintiffs have not provided this court with any forecast of evidence to the contrary. Where goods are fit for their ordinary purpose, there can be no breach of the warranty of merchantability inasmuch as such goods are merchantable. N.C.Gen.Stat. 25-2-314(2)(c). Having considered the allegations of the Amended Complaint and current case law, the court finds that there is no possibility that plaintiffs could obtain a judgment against the non-diverse defendant on such claims. Beaudoin v. Sites, 886 F.Supp. 1300, 1302 (E.D.Va. 1995).

### (ii) Particular Purpose

Plaintiffs have also asserted claims for breach of the implied warranty of fitness for a particular purpose. However, where a consumer makes ordinary use of goods -- which is the use the goods were intended to be used for -- that consumer will have no cause of action for breach of the implied warranty of fitness for a particular purpose.

McDonald Bros., Inc. v. Tinder Wholesale, LLC, 395 F.Supp. 530, 535 (M.D.N.C. 2005). Thus, plaintiffs' claim for breach of the implied warranty of fitness for a particular purpose is not sustainable inasmuch as the undisputed evidence shows that Mr. Arndt made ordinary use of the motorcycle. Having considered the allegations of the Amended Complaint and current case law, the court finds that there is no possibility that plaintiffs could obtain a judgment against the non-diverse defendant on such claims. Beaudoin v. Sites, 886 F.Supp. 1300, 1302 (E.D.Va. 1995).

### 3. Negligent "Representation" and Breach of Contract

#### a. Eighth Claim for Relief

In Count Eight, plaintiffs assert claims for breach of contract. In part, this claim attempts to reassert a products liability action against Jadian in the guise of a breach of contract claim, by asserting that Jadian failed to deliver to Mr. Arndt a safe and defect-free motorcycle, for which he had bargained. Although artfully pled, plaintiffs cannot plead breach of contract where the North Carolina Legislature has determined that the action is one for products liability. This part of the claim must fail for this reason.

Plaintiffs also contend that Jadian failed to follow through on a promise to obtain insurance, tags, and registration for the motorcycle. While the court notes that it is a typical practice of new vehicle dealers to obtain tags and registration for their

customers, the court is unaware of any industry practice whereby the dealer procures liability and other insurance for their customers. Review of the documents concerning the sale of the vehicle, attached to the Amended Complaint and the declaration submitted by American IronHorse, does not reveal any documentation concerning an agreement to procure insurance.

Putting those concerns aside, the fundamental problem with this claim is plaintiffs' lack of allegations concerning damages. If these agreements were made and breached, plaintiffs have not informed the court how they have been harmed. In any event, the lack of insurance and the possibility that plaintiffs' sustained damages resulting from the alleged accident, such damages claim would be subsumed by the claim for damages in a products liability action. Inasmuch as damages are an essential element of every tort and contract claim, these claims could not form the basis of any relief for plaintiffs against Jadian.

### b. Seventh Claim for Relief

In Count Seven, plaintiffs repackage the breach of contract allegations as an action for "negligent representation," which the court will consider as an action for negligent *mis*representation. In alleging and supporting a claim for negligent misrepresentation, the essential elements are that plaintiffs justifiably relied to their detriment on information prepared without reasonable care by a person who owed the

relying party a duty of care. Hudson-Cole Dev. Corp. v. Beemer, 132 N.C.App. 341, 346 (1999). Plaintiffs have failed to allege the essential element of detrimental reliance. This claim would afford the plaintiffs no relief against Jadian.

Assuming *arguendo* that the claims were well plead and found some evidentiary support, such claims would not stand in the way of this court's exercise of diversity jurisdiction inasmuch as the claims are *de minimis* when viewed in any light, and in particular when viewed in the bright light of a products liability claim with substantial personal injury. The minimal damages, if any, that one could imagine in relation to such contract claims would be *de minimis*, and would not stand in the way of this court's exercise of its jurisdiction. Having considered the allegations of the Amended Complaint and current case law, the court finds that there is no possibility that plaintiffs could obtain a judgment against the non-diverse defendant on such claims. Beaudoin v. Sites, 886 F.Supp. 1300, 1302 (E.D.Va. 1995).

**ORDER**

**IT IS, THEREFORE, ORDERED** that plaintiffs' Motion for Remand (#11) is **DENIED.**

Signed: December 26, 2007

_Dennis L. Howell_

Dennis L. Howell
United States Magistrate Judge